RECEIVED
IN MONROE, LA
OCT 1 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ROBERT L. LOYD | CIVIL ACTION NO. 05-1355 |
| VERSUS | JUDGE ROBERT G. JAMES |
| PILGRIMS PRIDE CORPORATION | MAG. JUDGE MARK L. HORNSBY |

## RULING

This is an employment discrimination action brought by Plaintiff Robert L. Loyd ("Loyd") against his former employer, Defendant Pilgrims Pride Corporation ("PPC"). Loyd alleges he was subjected to age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(a)(1) ("ADEA"), and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 17] filed by PPC. Loyd filed a Memorandum in Opposition [Doc. No. 22]. PPC filed a Reply [Doc. No. 27].

For the following reasons, PPC's Motion for Summary Judgment is GRANTED.

### I.     FACTS AND PROCEDURAL HISTORY

On December 31, 1992, Loyd, an African-American male, was hired by Con Agra Corporation ("Con Agra") as a Live Haul Driver at its chicken processing plant (the "Plant") in Farmerville, Louisiana.

On October 1, 2003, Loyd was told by Fred Stewart, Live Operations Manager, that he must attend all Con Agra safety meetings.

During the week of October 12, 2003, Loyd missed a mandatory safety meeting and failed

to attend an alternative safety meeting held later the same week.

On October 17, 2003, Loyd was placed on final warning for failing to attend a safety meeting by Kip Vanemburg ("Vanemburg"), Director of Live Haul. Loyd was advised that any future violation of company policy during the next year could result in his termination.

On November 24, 2003, PPC purchased the Plant from Con Agra.

On May 5, 2004, Loyd stopped his truck, fully loaded with live chickens, when he saw an empty truck approaching in the curve of the road leading to the Plant. Loyd states he pulled over because the road was not wide enough on the curve for two vehicles to pass, however, he admits he pulled over too far, causing his load to shift and his truck to overturn.[1] As a result of the accident, PPC convened an Accident Review Board ("ARB").

On May 7, 2004, the ARB determined that on the day of the accident, Loyd 1) failed to inspect his truck before beginning his trip; 2) stopped his fully loaded truck to yield the right-of-way to an empty truck, in violation of company policy[2]; and 3) caused the accident by his negligence. Since the accident occurred within the final warning one-year period, the ARB decided Loyd should be terminated.

On May 7, 2004, Loyd was terminated. He was fifty years old at the time.

On May 23, 2004, Loyd filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Loyd checked both the age and race boxes on the EEOC

---

[1] Loyd stated in a letter to PPC that the road caved in and caused his truck to overturn, however in his statement to the EEOC, he states he pulled over too far, causing the load to shift and overturn. In his deposition testimony, he asserts that these statements are consistent, but does admit he pulled over too far.

[2] Company policy states that the empty vehicle must pull over, not the loaded vehicle.

charge.

On April 29, 2005, the EEOC issued its "Dismissal and Notice of Rights" form letter, finding that it was unable to conclude that the information obtained established violations of Title VII and the ADEA.

On July 28, 2005, Loyd filed this lawsuit against PPC.

On August 11, 2006, PPC filed the pending Motion for Summary Judgment [Doc. No. 17].

On September 11, 2006, Loyd filed a Memorandum in Opposition [Doc. No. 22].

On October 2, 2006, PPC filed a Reply [Doc. No. 27].

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render

3

a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B. Age and Race Discrimination Claims

Loyd argues he was the victim of disparate treatment because he was terminated after having a single accident, while PPC retained younger, white employees after they had one or more accidents.

The ADEA prohibits an employer from discriminating against any person forty years of age or older in the terms and conditions of his employment because of his age. *See* 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits an employer from discriminating against any person in the terms and conditions of employment because of his race. *See* 42 U.S.C. § 2000e-2.

Disparate treatment claims under the ADEA and Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (ADEA); *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (Title VII).

To establish a *prima facie* case of age or race discrimination, Loyd must show that:

(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was replaced by someone outside the protected class.

*Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (ADEA); *see also Wheeler v.*

*BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (Title VII).

If a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for the plaintiff's termination. *Lapierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996) (citing *McDonnell Douglas*, 411 U.S. at 802).

If the defendant offers a legitimate, non-discriminatory reason for terminating the plaintiff's employment, the burden shifts to the plaintiff to raise a genuine issue of material fact through circumstantial evidence that the defendant's proffered reason is pretextual. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 138-142 (2000)).

### 1. *Prima Facie* Case

Loyd argues he has satisfied his *prima facie* case because he was a fifty-year-old African-American, was terminated, and was replaced by Mr. Dye[3] ("Dye"), a white thirty-seven year old. PPC does not dispute that Loyd met the other requirements of his *prima facie* case, but argues that Loyd was not specifically replaced. According to PPC, other drivers absorbed his responsibilities.

A plaintiff cannot show he was replaced if the "terminated employee's job duties are distributed among other employees after termination," and his position is not filled. *Martin v. Bayland, Inc.*, 403 F. Supp. 2d 578, 583 (S.D. Tex. 2005), *aff'd*, No. 05-41-85, 2006 U.S. App. LEXIS 11809 (5th Cir. May 12, 2006). However, in this case, Dye was hired as a Live Haul

---

[3] The parties have referred to Mr. Dye as "Shane Dye" and "Gregory Dye." The Court will refer to him as "Dye."

Driver six weeks after Loyd's termination and performed the same duties Loyd had. Therefore, the Court finds that Loyd has satisfied his *prima facie* case.

### 2. Legitimate, Non-Discriminatory Reason

Loyd was placed on final warning in October of 2003 for missing a mandatory safety meeting, which meant any subsequent infractions of company policy during a one-year period could result in termination. PPC determined Loyd was at fault in the May 5, 2004 accident and terminated him as a result. Therefore, PPC has offered a legitimate, non-discriminatory reason for terminating Loyd.

### 3. Pretext

The burden shifts to Loyd to demonstrate that PPC's reason for his termination is pretext for age or race discrimination. Loyd claims he was treated differently because of his age and race when he was placed on final warning for missing a mandatory safety meeting and when he was terminated for having a single accident.[4]

First, Loyd claims that no other driver was placed on final warning for missing a safety meeting and that other drivers who have missed safety meetings have been given a review of the meeting. However, PPC presented evidence that only drivers who secure clearance beforehand from a supervisor, or are unable to attend a safety meeting because of a scheduling conflict, are given the option of a one-on-one review. Loyd neither secured clearance nor had a scheduling

---

[4]Loyd also claims there is sufficient evidence to disbelieve PPC's purported reason for termination because he was replaced by a younger, white employee. While the Court found Loyd was replaced by Dye, a white thirty-seven year old, Loyd has not offered any evidence that suggests his replacement was motivated by age or race animus.

6

conflict.[5]

Loyd also argues that PPC's contention that no one missed a safety meeting without an excuse or permission is incredulous, but he has offered no evidence to contradict the affidavit of Richard Davis ("Davis"), Human Resource Manager, who states: "Since we made safety meetings mandatory, Loyd is the only employee to miss a meeting under either Con Agra or PPC." [Doc. No. 17-3, Affidavit of Davis, ¶ 14]. In the absence of any evidence to the contrary and the absence of any other evidence of age or race animus, the Court must accept PPC's statement as true.

PPC further notes that its predecessor, Con Agra, initiated mandatory safety meetings in response to a forklift fatality at the Plant in August of 2003. Loyd admits he was aware of the serious motivation behind the company's response. While Loyd disputes the merits of placing him on final warning for this kind of transgression, he has not offered evidence that suggests there was age or race animus behind PPC's decision. Therefore, Loyd cannot show pretext on this basis.

Second, Loyd claims PPC has retained four other white drivers, three of whom were under the age of forty, despite having had accidents, while he was terminated for having a single accident. Loyd compares himself specifically to Richard Dugal, Robert Dugal, Erie McLelland, and Huey Dyess.[6]

---

[5]Loyd admits in his deposition testimony that he missed the safety meeting because he went home after his shift ended and "fell asleep." [Doc. No. 17-4, Deposition of Loyd, p. 18]. He also admits he could have attended another safety meeting that week. *Id.* at 25.

[6]Robert Tate Dugal, a white male under the age of forty at the time, was placed on final warning on October 3, 2003, for being involved in an accident. On October 10, 2005, he was charged with another accident and his driving privileges were revoked for one year.
Richard Tadd Dugal, a white male under the age of forty, was in an accident during

7

PPC states that the records of the Dugals, McLelland, and Dyess show they each received final warnings for being involved in an accident, but that, at the time of their accidents, they were not on final warning or the final warning period had expired. Conversely, Loyd was on final warning when the accident occurred, and, because Loyd was at fault, the accident was a dischargeable offense.

PPC also points out that its predecessor, Con Agra, terminated Danny Boyd ("Boyd"), a white, forty-six-year-old Live Haul Driver, because he was on final warning at the time he was involved in an accident which was later determined to be his fault. Thus, PPC claims that its termination of Loyd was consistent with his only true comparator, Boyd.

Evidence of disparate treatment is circumstantial evidence that the defendant's proffered reason is merely pretext for discrimination. To show disparate treatment, "a plaintiff must show that the employer gave preferential treatment to another employee under 'nearly identical' circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. Univ. Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)).

Unlike the employees who were retained, Loyd was on final warning when the accident occurred, and his negligence caused the accident. Therefore, Loyd has not raised a genuine issue

---

December 2003, but was not at fault. He was involved in another accident on March 23, 2004, and was placed on final warning.

Eric McLelland, a white male under the age of forty, was involved in an accident on June 10, 2005, and was placed on final warning, but incurred no other infractions.

Huey Dyess, a white male over the age of forty, was involved in an incident on a chicken farm and was given a verbal warning. He was involved in an accident on June 8, 2005, and was placed on final warning.

of material fact for trial that he was terminated under "nearly identical" circumstances to white and/or younger employees who were retained. *See, e.g., Bouie v. Equistar Chemicals LP*, No. 05-20382, 2006 U.S. App. LEXIS 15701, at *8 (5th Cir. June 22, 2006) (per curiam) ("Because [plaintiff] was discharged for failure to comply with two safety protocols, his situation is not nearly identical to that of the white employees who were not fired for failure to comply with only one safety protocol.") (citing *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004)). On the other hand, PPC has offered evidence that its predecessor terminated an employee for the same misconduct. Therefore, the Court finds that Loyd cannot prove pretext under the ADEA or Title VII.

## III. CONCLUSION

For the foregoing reasons, PPC's Motion for Summary Judgment [Doc. No. 17] on Loyd's ADEA and Title VII claims is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 10 day of October, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE